

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| WHITNEY GUILLORY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:07-CV-163-TH |
| | § | JURY |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT, | § | |
| DR. CARROL THOMAS, Superintendent, and | § | |
| FERGUSON PARKER, Jr., Former Band Director, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION & ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the *Defendants Beaumont Independent School District and Dr. Carrol Thomas's Motion for Summary Judgment* [Clerk's Docket No. 33]. Having considered the motion, the responsive submissions of the parties, the summary judgment record and the applicable law, the Court enters the following order.

## I. INTRODUCTION

This civil action stems from Ferguson Parker, Jr.'s ("Parker") sexual abuse of Whitney Guillory ("Guillory") while she was a student and he was the band director at Ozen High School in Beaumont, Texas. Parker has already been criminally prosecuted in state court for these acts. In October 2007, he pleaded guilty to (1) sexual assaulting Guillory, and (2) to having an improper relationship with a student. Those matters are not in dispute. The case *sub judice* is

instead concerned with the civil repercussions of Parker's conduct and the Beaumont Independent School District's ("BISD") related response. Guillory alleges that BISD, its superintendent Dr. Carrol Thomas ("Thomas") and Parker violated certain rights secured to her by the United States Constitution and the common law of the State of Texas. In the instant motion, BISD and Thomas move for summary judgment on all claims against them.[1]

## II. FACTUAL & PROCEDURAL HISTORY

Guillory first met Parker in 2001 when she began her freshman year at Beaumont's Ozen High School. Guillory played clarinet in the Ozen band, which Parker directed. Although Parker did not sexually harass or assault her during her freshman year, Guillory claims that Parker did pay excessive attention to her. Guillory believes that this behavior demonstrated that Parker was "grooming" her for future harassment.

Later in the 2001-2002 school year, Parker was criminally charged with: (1) exposing himself to a 13 year-old student at BISD's King Middle School, (2) having sexual intercourse with a 15 year-old student at King Middle School, and (3) having sexual intercourse with a 16 year-old student at Ozen High School (collectively, the "2001 Allegations").

Thomas and BISD conducted a formal investigation into the student accusations against Parker after his indictment. Guillory was one of the students interviewed as part of the investigation. At that time, she denied having experienced or witnessed any sexual misconduct by Parker.

---

[1] Parker has not joined in this motion. Accordingly, the Court's use of the term "Defendants" in this order refers only to BISD and Thomas.

After completing the investigation, Thomas recommended that BISD's Board of Trustees suspend Parker without pay. (Pl.'s Resp. to Def.s' Mot. for Summ J., Ex. 1 at 28) And, on February 21, 2002, the Board voted to suspend Parker.

Parker subsequently went to trial on the criminal charges relating to the 2001 Accusations and was acquitted. BISD then promptly offered to rehire him as Ozen band director.[2]

Guillory argues that the decision to reinstate Parker is the principal action to which civil liability attaches. Guillory states that BISD's decision shows deliberate indifference toward the risk that Parker posed to Guillory and other BISD students, because Parker was reinstated despite Thomas and the Board of Trustees' knowledge of the allegations that Parker had sexually abused

---

[2] The evidence in the record creates some confusion as to Parker's exact status with BISD between the time he was initially suspended and the time he went back to work. Defendants say that Parker was only suspended, while Parker claims he was suspended and then resigned. Specifically, Defendants state that Parker was first suspended with pay, then put on suspension without pay, then "reinstated" and given back pay for the entire suspension period. They have presented a letter dated February 14, 2003 which states that the BISD Board of Trustees voted to "Rescind the Suspension without Pay of Professional Employee Ferguson Parker, And to Authorize Back Pay for Suspension Period." (Def.s' Mot. for Summ. J., Ex. 1 at 17). On the other hand, Parker states in deposition testimony that after being suspended without pay, he submitted his resignation to BISD. (Def.s' Supplemental Reply to Mot. for Summ. J., Ex. A-3, Parker Depo. 10:28, May 14, 2008). And, Parker states that BISD offered to put him back to work once he was acquitted of the 2001 Allegations. (*Id.*, Parker Depo. 10:29). Further, while Parker went back to work as band director in 2003, his official employment status was different: he was a "permanent substitute," rather than a "probationary contract" employee. (*Id.*, Parker Depo. 10:31-34). Regardless, it does not appear that there is much difference in the distinction between "reinstated" and "rehired." The record is fairly clear that in either event, Parker did not have a contract with BISD—and BISD had no obligation to make him Ozen band director again—when he was acquitted of the 2001 Allegations. Accordingly, the Court will use the terms "reinstated" and "rehired" interchangeably in this order, indicating that the Court's ultimate conclusions here would be the same, whether Parker resigned his position or was simply suspended while charges on the 2001 Allegations were pending.

three BISD students. Further, Guillory argues that Parker was reinstated without safeguard or restriction.

For their part, Defendants claim that Parker did not present a danger to BISD students, given that he had been acquitted of all criminal charges. Further, Defendants claim that they took precautionary measures upon rehiring Parker. For example, Parker met with Thomas and the principal of Ozen High School to discuss the terms and conditions of his reinstatement before it became effective. Parker was also advised not to be alone with any students in his office, nor to close his office door.

In any event, whether the risk associated with Parker was perceived to be large or small, it proved to be real. While on suspension, Parker began inappropriate sexual relations with Guillory. He continued to sexually abuse Guillory after returning to his position as Ozen band director in 2003 and 2004. However, Parker and Guillory were discrete about this behavior, and made efforts to conceal their relationship from others. Guillory's parents had no knowledge of the ongoing abuse. Likewise, there is no evidence that any teacher or BISD administrator was aware that Parker was acting inappropriately with Guillory.

On occasion, Parker took Guillory away from campus to have sexual intercourse with her during school hours. This practice proved to be his undoing. On December 16, 2004, Guillory's mother happened to go home midday, whereupon she discovered a partially clothed Parker hiding in Guillory's bedroom closet.

Hours after this discovery, Guillory and her parents met with Thomas and BISD's attorney Melody Chappell.[3] Significantly, the parties sharply disagree about what was said during this encounter.

The meeting began without Ms. Chappell being present. During this time, the Guillorys claim "Thomas tried to convince them to keep quiet." (Pl.'s Resp. to Def.s' Mot. for Summ. J., Ex 2 at 8). They allege that Thomas tried to dissuade them from taking any action, stating that if they did act, "the media will make a black man (Parker) look bad."[4] (Pl.'s Resp. to Def.s' Mot. for Summ. J., Ex 2 at 8). Chappell then arrived and asked Thomas what had happened. Thomas allegedly replied, "it's Parker again." The Guillorys claim that Chappell then chided Thomas, openly saying things like "I told you so," and "I knew it would happen." (Pl.'s Resp. to Def.s' Mot. for Summ. J.; Ex. 4, Guillory Aff. at 1-2; Ex. 5, T. Piper Aff. at 1-2; Ex. 6, C. Piper Aff. at 1-2). The Guillorys contend that Chappell and Thomas continued in an exchange that made clear Chappell had advised Thomas and other BISD officials not to rehire Parker after his acquittal because he posed a continuing risk to students—but Thomas and BISD disregarded Chappell's advice. (*Id.*). For their part, BISD and Thomas deny that any of these comments were made in front of the Guillorys, and deny that Chappell gave any such advice when Parker was rehired.

Based on these events, Guillory subsequently filed suit against BISD, Thomas and Parker. Specifically, Guillory has sued BISD for violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-1688. She has also sued BISD, Thomas and Parker under 42 U.S.C. § 1983 for violating her right to bodily integrity; a substantive due process right

---

[3] Guillory's parents' last name is Piper. But, for clarity and simplicity in this order, the Court refers to Guillory and her parents as the "Guillorys."

[4] Thomas, Parker and the Guillorys are black.

protected by the Fourteenth Amendment.  Finally, Guillory asserts state law claims of assault and battery against Parker, and against Thomas for facilitating Parker's acts.  Defendants now move for summary judgment on all claims against them.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, after viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp*., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(C).  The moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  If the moving party establishes the absence of any genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Conclusory allegations, unsubstantiated assertions, and mere scintillas of evidence do not satisfy this burden.  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is proper where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof.  A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  But the court is not obligated to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463

(5th Cir. 1996). In reviewing the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Dickerson v. Bailey,* 336 F.3d 388, 394 (5th Cir. 2003). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468-69 (1992).

## IV. DISCUSSION

A. Section 1983 Claims

Guillory asserts claims under 42 U.S.C. § 1983 against BISD, and against Thomas in his individual capacity. Section 1983 is a remedial statute that provides a cause of action for violations of substantive federal rights. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 382 (1979). A claim under Section 1983 has two elements: (1) a violation of the Constitution or federal law and (2) a state actor who commits the violation. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988)). Here, Guillory's 1983 claims are based on the sexual abuse inflicted upon her by Parker—a violation of her right to bodily integrity. The right to bodily integrity is protected under the Fourteenth Amendment of the United States Constitution. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc). Furthermore, Guillory has supplied sufficient evidence to show that Parker (her teacher) was a state actor for Section 1983 purposes.

So, Guillory has sufficiently alleged a claim under Section 1983. She seeks to hold Thomas and BISD liable on this basis.

Ordinarily, Section 1983 liability cannot be premised on a theory of respondeat superior or vicarious liability. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690-94 (1978); *Taylor,* 15 F.3d at 452. However, a supervisor can be liable for violations committed by subordinate employees when the supervisor acts with deliberate indifference to those violations. *Atteberry,* 430 F.3d at 254 (citing *City of Canton v. Harris,* 489 U.S. 378, 386-90(1989)). Similarly, a school district may be liable when the execution of its official policy violates a federally protected right. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). But, Thomas and BISD argue that the evidence is insufficient to impose liability on either of these bases. Accordingly, they move for summary judgment on Guillory's 1983 claims. For the reasons that follow, the Court finds their arguments unavailing.

i.   Section 1983 Claim Against Thomas

Thomas moves for summary judgment based on qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)); *Stotter v. Univ. of Tex. at San Antonio*, 508  F.3d 812, 823 (5th Cir. 2007); *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006); *Atteberry*, 430 F.3d at 253; *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005); *Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004).

a) Qualified Immunity: Legal Standard

Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir. 1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *see Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Estate of Davis ex rel. McCully*, 406 F.3d at 380 (quoting *Mitchell*, 472 U.S. at 526); *see Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003). Because it is "an affirmative defense, the defendant must both plead and establish his entitlement to immunity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir. 1997) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)); *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Harlow*, 457 U.S. at 815. But, for summary judgment purposes, "a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir.), *cert. denied*, 540 U.S. 826 (2003) (quoting *Beck v. Texas State Bd. of Dental Exam'rs,* 204 F.3d 629, 633 (5th Cir.*), cert. denied*, 531 U.S. 871 (2000)). "It is sufficient that the movant in good faith pleads that [he] is entitled to absolute or qualified immunity." *Id.*; *see Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). "'Where . . . a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the *plaintiff then has the burden* to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358,

363 (5th Cir. 2007) (emphasis added) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)); *see Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *Estate of Davis ex rel. McCully*, 406 F.3d at 380.  As the Fifth Circuit has explained, "'[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'"  *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (quoting *Pierce*, 117 F.3d at 871-72).

"To discharge this burden, a plaintiff must satisfy a two-prong test." *Atteberry,* 430 F.3d at 253.  First, the plaintiff must allege that the defendants violated a constitutional right under current law.  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  Second, the plaintiff must show that the defendant's behavior was not objectively reasonable under clearly established law at the time the conduct occurred.  *Hampton*, 480 F.3d at 363; *Easter*, 467 F.3d at 462; *Michalik*, 422 F.3d at 257; *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 613-14 (5th Cir. 2004); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004); *Beltran*, 367 F.3d at 303.

"If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity."  *Hampton*, 480 F.3d at 363 (citing *Easter*, 467 F.3d at 462).  On the other hand, if the plaintiff states a constitutional claim, a district court must then make two distinct determinations in order for the official to be denied qualified immunity. *See Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).  First, the court must decide whether "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law."  *Id.*  Second, the court must decide whether "a genuine issue of fact exists regarding

whether the defendant(s) did, in fact, engage in such conduct." *Id.*  The Fifth Circuit advises district courts making these determinations to "state for the record, and for the benefit of the circuit court on appeal, their reasons for denying immunity." *Shaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987).  Such a statement of reasons is important because the circuit court has jurisdiction to review the interlocutory appeal of a qualified immunity denial "only to the extent that [the denial of summary judgment] turns on an issue of law." *Charles*, 522 F.3d at 511 (quoting *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)); *Shaper*, 813 F.2d at 713; *see Faulkenbery v. Lee*, 307 F. App'x 813, 2009 U.S. App. LEXIS 852 (5th Cir. 2009) (dismissing interlocutory appeal of qualified immunity summary judgment denial based on lack of jurisdiction) (full citation omitted).

b)  Qualified Immunity:  Analysis

As to the first step in the qualified immunity analysis, Guillory has alleged the violation of a clearly established constitutional right:  her right to bodily integrity.  The Fifth Circuit Court of Appeals long ago recognized that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (en banc).  Here, Guillory alleges that Thomas violated Section 1983 because he knew of the risk that Parker would sexually abuse BISD students and allowed the abuse to occur.  Such a claim properly alleges the violation of an established constitutional right.

The second step of the qualified immunity analysis requires the Court to determine whether Thomas's behavior was objectively reasonable under clearly established law at the time

the conduct occurred. This determination requires the Court to consider Thomas's duty as a school supervisor with respect to the violation alleged by Guillory. *See Taylor*, 15 F.3d at 454-55.

As previously stated, supervisors may not be held vicariously liable for constitutional violations committed by subordinate employees. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005). But, a supervisor may be liable when he acts with deliberate indifference to such violations. *Id.; Taylor*, 15 F.3d at 454. This standard of care for a school supervisor was clearly established long before the time of the violation alleged by Guillory. *Taylor*, 15 F.3d at 455.

The Fifth Circuit employs a specific test for determining whether a supervisory school official can be held liable under Section 1983 for an employee's sexual abuse of a student. *King v. Conroe Indep. Sch. Dist.,* 289 F. App'x 1, 3 (5th Cir. 2007) (citing *Taylor*, 15 F.3d at 454). According to that test, the supervisor will be held liable if:

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3) such failure caused a constitutional injury to the student.

*Id.* (quoting *Taylor*, 15 F.3d at 454); *Alton v. Texas A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999); *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 51 (5th Cir. 1995); *Doe v. Granbury ISD,* 19 F. Supp. 2d 667, 674 (N.D. Tex. 1998); *Foster v. McLeod Indep. Sch. Dist.*, 2009 U.S. Dist. LEXIS 4682, at *4-5, 209 WL 175154 (E.D. Tex. Jan. 23, 2009); *Evans v. St. Bernard Parish*

*Sch. Bd.*, 2004 U.S. Dist. LEXIS 5715, at *8, 2004 WL 737493 (E.D. La. April 5, 2004). So, in order to avoid Thomas's qualified immunity defense, Guillory must put forth evidence sufficient to create a genuine issue of material fact on each of these issues. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998); *Hagan*, 51 F.3d at 51-52. For the reasons that follow, the Court finds that she has done so.

(1) <u>Knowledge of Inappropriate Sexual Behavior</u>

Thomas admits that in October 2001 he learned of allegations that Parker had been sexually inappropriate with a student. (Def.s' Mot. for Summ. J., Ex. 1, p.1). At that time, Thomas authorized an investigation which included interviewing students and cooperating with the Beaumont Police Department in its criminal investigation. After conducting that investigation, Thomas formally recommended that BISD's Board of Trustees suspend Parker without pay. Then, in February 2002, Parker was arrested and indicted based on the three alleged incidents of sexual abuse: (1) exposing himself to a 13 year-old student at BISD's King Middle School, (2) having sexual intercourse with a 15 year-old student at King Middle School, and (3) having sexual intercourse with a 16 year-old student at Ozen High School.

As such, the Court finds that Guillory has supplied sufficient evidence to create a genuine fact issue regarding whether Thomas knew of a pattern of inappropriate sexual conduct by Parker that pointed plainly toward a conclusion that Parker had been sexually abusing students. *See Hagan*, 51 F.3d at 52 (finding that the school principal "had undoubtedly learned of facts or a pattern of behavior that pointed plainly toward the conclusion that [the teacher] was engaging in sexual activity with [the school's] students"); *Evans*, 2004 U.S. Dist. LEXIS 5715, at *10

(finding that principal "was aware of a pattern of inappropriate sexual behavior [by teacher] that pointed toward the conclusion that O'Neil was sexually abusing students").

Given this finding, the next consideration is whether Thomas acted with deliberate indifference to the constitutional rights of his students.

(2) Deliberate Indifference

"Deliberate indifference means shutting one's eyes to a risk one knows about but would prefer to ignore." *Delgado v. Stegall,* 367 F.3d 668, 671 (7th Cir. 2004) (Posner, J.) (citing *Boncher v. Brown County,* 272 F.3d 484, 486 (7th Cir. 2001)). It is a stringent standard of fault, requiring that a [state actor] disregarded a known or obvious consequence of his action. *Bd. of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410 (1997). It "describes a state of mind more blameworthy than negligence." *Atteberry*, 430 F.3d at 254 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). The deliberate indifference requirement "permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally oversights." *Gonzalez v. Ysleta*, 996 F.2d 745, 756 (5th Cir. 1993) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)). "Deliberate indifference consists of a deliberate choice to follow a course of action…made from various alternatives." *Gonzalez*, 996 F.2d at 756 (quoting *City of Canton*, 489 U.S. at 389-90). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton,* 168 F.3d at 201 (citing *Doe v. Dallas,* 153 F.3d at 218).

The test for deliberate indifference is subjective, *Atteberry*, 430 F.3d at 255, and often requires a fact-laden analysis. *Taylor*, 15 F.3d at 457 n.12.

In the instant case, the question is whether Thomas's actions relating to Parker's reinstatement as Ozen band director demonstrate deliberate indifference to the risk that Parker would sexually abuse Guillory and other BISD students. Answering this question requires careful consideration of the facts.

In October 2002 and January 2003, Parker was tried in the Criminal District Court of Jefferson County, Texas on the sexual assault and indecency charges arising from the 2001 Allegations. A district judge heard the case in two bench trials; and, after finding that there were conflicting accounts of the alleged sexual misconduct, acquitted Parker of all charges.

After Parker was acquitted, Thomas offered to put him back to work as band director at Ozen. (Def.s' Supplement to Mot. for Summ. J., Ex. A-3, Parker Depo. 10:29-30). Guillory has submitted competent summary judgment evidence showing that Thomas took this action in spite of the advice of BISD's attorney, Melody Chappell.[5] (Pl.'s Resp. to Def.s' Mot. for Summ. J.; Ex. 4, Guillory Aff. at 1-2; Ex. 5, T. Piper Aff. at 1-2; Ex. 6, C. Piper Aff. at 1-2). As previously discussed, the Guillorys claim that during their December 16, 2004 meeting with Thomas, Ms. Chappell revealed that she had advised Thomas not to rehire Parker, and had warned him that Parker was a danger to students. These alleged statements indicate that Chappell advised Thomas and BISD not to rehire Parker because he posed a continuing risk to BISD students.

Still, Defendants suggest that they were legally obligated to reinstate Parker, stating that "[h]e was a contractual teacher with BISD and, having been acquitted, was entitled to be

---

[5] Defendants deny that Chappell made such statements in the Guillorys' presence. But, at the summary judgment stage, this Court must credit the Guillorys version of events. It is clear that Ms. Chappell was Defendants agent during the meeting. So, her alleged statements can be considered here as the admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2).

reinstated to his position as band director." (Def.s' Mot. for Summ. J. at 20). The evidence suggests otherwise. As previously noted, Parker resigned his position after being suspended without pay. Further, Parker's last contract with BISD was a "probationary contract" for the 2001-2002 school year. So, any contract Parker had with BISD would have expired before his acquittal in 2003.[6] For these reasons, this case is distinguishable from those in which a teacher is accused of sexual misconduct with a student, and school administrators must investigate the student's complaint while respecting the rights of a current employee. *Cf. Doe v. Dallas,* 153 F.3d 211; *Hagan,* 51 F.3d 48; *Taylor,* 15 F.3d 443; *King v. Conroe,* 289 F. App'x 1. Here, the facts in the record do not show that BISD had any obligation, legal or otherwise, to reinstate Parker. As such, it appears that Thomas and other BISD administrators actively recruited Parker to return to his position as band director despite the fact that Thomas had previously recommended that Parker be suspended without pay (based on Thomas's own investigation of student allegations).

Guillory next argues that Thomas and BISD demonstrated deliberate indifference by reinstating Thomas in 2003 without safeguards and restrictions that would prevent him from abusing Ozen students. Thomas and BISD dispute this claim, and offer evidence of supposed precautionary measures taken before Parker was reinstated.

First, Defendants argue that before Parker went back to work, Thomas met with him and "discussed the terms and conditions of his reinstatement." (Def.s' Mot. for Summ. J. at 19). However, Defendants do not describe those terms and conditions; much less elaborate on their

---

[6] Under the Texas Education Code, a school district may (in lieu of discharge) suspend a probationary contract teacher without pay for good cause "for a period not to extend beyond the end of the current school year." Tex. Educ. Code Ann. § 21.104 (Vernon 2006).

precautionary qualities. Parker was simply advised not to be alone with any students in his office, nor to close his office door. (Def.s' Supplement to Mot. for Summ. J., Parker Depo., Ex. A-4, Parker Depo. 11:03-04).

Defendants argue that, as another precaution, they hired a female assistant band director, Lisa Jacobs, to monitor Parker, and required her to remain with him. But, the evidence belies the contention that Jacobs was hired for these purposes. Instead, the facts show that a female assistant was hired at Parker's request "to protect [him] from allegations" made by students. (Def.s' Supplement to Mot. for Summ. J., Ex. A-3, Parker Depo. 10:40, 10:46). There is no evidence whatsoever that Ms. Jacobs was hired to keep an eye on Parker, or to protect students from sexual abuse. Parker admits that such duties were not part of Jacobs's role as assistant band director (Def.s' Supplement to Mot. for Summ. J., Ex. A-3, Parker Depo. 10:41-46). And, Ms. Jacobs states that: (1) she never discussed the 2001 Allegations against Parker with any Ozen or BISD administrator, (2) she was never asked to keep an eye on Parker, (3) she was never told that she had any responsibility to protect the students from Parker if he was abusing them, (4) she was never given any special training relating to sexual harassment or abuse, and (5) she was not aware of any special precautions put in place to protect students or to monitor Parker. (Pl.'s Supplement to Resp. to Mot. for Summ. J., Ex. 12, Jacobs Depo. 09:34-36, 10:02-03). In short, the facts do not show that Jacobs was hired for the purpose of preventing abuse.

Parker states that BISD put no special conditions on his employment. (Def.s' Reply to Mot. for Summ. J., Ex. A-3, Parker Depo. 10:36). And, Parker states that BISD did not give him any special training regarding sex abuse and inappropriate behavior. He only recalls reviewing BISD's teacher handbook on those topics during a general teacher in-service. (*Id.*, Ex. A-4, Parker Depo. 10:58-11:00).

Finally, Guillory and her parents allege that when they met with Thomas on December 16, 2004, after Parker was found hiding in Guillory's bedroom closet, Thomas tried to persuade them to cover up the incident. The Guillory's allege that he "tried to convince them to keep quiet, and discouraged them from taking any action, stating: "the media will make a black man (Parker) look bad." (Pl.'s Resp. to Def.s' Mot. for Summ. J., Ex 2 at 8). Guillory argues that these statements show that Thomas had a deliberately indifferent attitude toward Parker's sexual abuse, and refused to take action to address it. Of course, Thomas denies ever making these statements. But, the Court is required to accept them at this summary judgment stage.

To summarize, Guillory has provided competent summary judgment evidence tending to prove the following course of conduct: (1) Thomas knew about the prior sexual abuse allegations against Parker; (2) after investigating those allegations, Thomas recommended that BISD suspend Parker without pay; (3) when Parker was acquitted of criminal charges, he was no longer a BISD employee, and the district had no obligation to rehire him; (4) BISD's attorney advised Thomas that Parker was a danger to BISD students, and advised that he not be rehired; (5) Thomas offered Parker the band director position anyway; (6) Thomas allowed Parker to return to work with no special conditions on his employment; (7) Thomas gave Parker no special warnings or instructions other than advising him on one occasion not to shut his door or be alone with students; and finally, (8) when confronted with proof that Parker was sexually assaulting Guillory, Thomas tried to cover up the abuse.

The Court finds that this evidence is legally sufficient to support a jury finding that Thomas was deliberately indifferent to the constitutional rights of Guillory and other Ozen students.

Furthermore, the Court finds that genuine fact issues exist regarding Thomas's course of conduct. For example, Defendants dispute that BISD attorney Melody Chappell stated, in front of the Guillorys, that she had advised Thomas not to rehire Parker. Defendants dispute Guillory's claim that BISD had no obligation to reinstate Parker following his acquittal. And, Defendants dispute that Thomas tried to silence the Guillorys. These facts are material to the question of whether Thomas acted with deliberate indifference. Therefore, a genuine issue of material fact exists as to this element of Guillory's claim.

(3) <u>Causation</u>

Finally, the Court finds that Guillory has supplied evidence sufficient to support a finding that Thomas's alleged failure to take action to prevent Parker from abusing Guillory caused a constitutional injury to her. Guillory alleges a course of conduct in which Thomas turned a blind eye toward the risk posed by Parker, helped reinstate him as band director, then failed to properly train and supervise him. And, because of these actions (Guillory argues), Parker was put in a position to continuously abuse Guillory from the time she was a 15 year-old sophomore, until December of her senior year.

As such, the Court finds that there is sufficient evidence in the record to create a genuine issue of material fact on the question of whether Thomas's course of conduct caused a violation of Guillory's constitutional rights.

c) <u>Qualified Immunity Conclusion</u>

In summary, the Court finds that Guillory has alleged the violation of a clearly-established constitutional right caused by Thomas's actions; and genuine issues of material fact

exist with respect to the objective reasonableness of those actions. Therefore, Thomas's motion for summary judgment based on qualified immunity must be denied.

ii.    Section 1983 Claim Against BISD

The Court now turns to Guillory's Section 1983 claims against BISD. As she did in her claim against Thomas, Guillory alleges that BISD is liable under Section 1983 for violating her constitutional right to bodily integrity.

a)    District Liability:  Legal Standard

A school district cannot be held liable under Section 1983 based on a respondeat superior theory. *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690-94 (1978); *Doe v. Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc). However, it may be held liable if the plaintiff can show that her constitutional rights were violated by the execution of an official policy attributable to the district. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). The plaintiff must also demonstrate that, through the district's deliberate conduct, district policy was the moving force behind the violation. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211,215-16 (5th Cir. 1998). These municipal liability standards are generally phrased as a three-part test, requiring the plaintiff to show: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell,* 436 U.S. at 694).

Only decisions made by officials with "final policy-making authority" are attributable to a government entity. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Pembaur v. City*

*of Cincinnati,* 475 U.S. 469, 483 (1986); *Rivera*, 349 F.3d at 247.  And, "[w]hether a particular official has final policymaking authority is a question of state law."  *Rivera*, 349 F.3d at 247 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (internal quotations omitted).  Under Texas law, a school district's final policymaking authority lies exclusively with its Board of Trustees.  *Id.* at 248; *Jett,* 7 F.3d at 1245.

The Fifth Circuit defines "official policy" to include both formal policy and informal custom:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district]…or by an official to whom the [district] has delegated policy-making authority; or

> 2.  A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene,* 65 F.3d at 1304 (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

In the instant case, Guillory argues that BISD is liable because its Board of Trustees voted to reinstate Parker as Ozen Band Director; thereby enabling Parker to sexually abuse Guillory in violation of her constitutional rights.  Accordingly, Guillory has alleged that an official with final policymaking authority (the BISD Board of Trustees) adopted and promulgated a policy (the decision to reinstate Parker) that was the moving force behind the violation of her rights (Parker's abuse).

Still, a school district can only be liable under Section 1983 for a hiring decision if that decision "reflects deliberate indifference to the risk that a violation of a particular constitutional

or statutory right will follow the decision." *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (quoting *Bd. of the County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 411 (1997). Because of the risk that municipal liability for a hiring decision may collapse into respondeat superior liability, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Brown*, 520 U.S. at 410. The link between the applicant's background and the specific constitutional violation must be strong. *Id.* at 412. Liability depends on a finding that the employee was "highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference'" sufficient to impose liability. *Id.* at 411.

b) <u>District Liability: Analysis</u>

The Court incorporates its previous discussion of deliberate indifference, as the same standard of fault is applicable and many of the facts discussed therein are relevant here.[7]

Considering these facts, the Court finds that the link between Parker's background and the specific constitutional violation (sexual abuse of a student) is strong. Parker was hired by

---

[7] By incorporating the factual discussion from the previous section on Thomas's deliberate indifference, the Court does not suggest that BISD can be liable for Thomas's acts. The Court acknowledges that "the Board of Trustees, not the Board in combination with any subordinate school district officials (i.e. teachers, principals, and superintendents), is the 'official policymaker' for purposes of § 1983 [district] liability." *Foster v. McLeod Indep. Sch. Dist.,* 2009 U.S. Dist. LEXIS 4682, at *2, 209 WL 175154 (E.D. Tex. Jan. 23, 2009) (citing *Rivera*, 349 F.3d 244). The actions of principals and superintendents cannot be imputed to the District for purposes of § 1983 liability. *Brittany B. v. Martinez,* 494 F. Supp. 2d 534, 541 (W.D. Tex. 2007).

BISD in January 2000. Over the next two years, three BISD students accused him of sexual misconduct. After investigating these charges, Thomas recommended that BISD's Board of Trustees suspend Parker without pay. Parker was subsequently indicted and went to trial on these accusations. While the trial judge ultimately concluded that Parker was not guilty beyond a reasonable doubt, the allegations against Parker were deserving of careful scrutiny by BISD's Board of Trustees. Parker's background shows a potential pattern of inappropriate sexual behavior with students. The Court finds that there is a substantial link between this background and the risk that if reinstated as band director, Parker would sexually assault students.

Further, having reviewed the record, the Court finds that the summary judgment evidence shows: (1) that BISD's Board of Trustees had knowledge of allegations that Parker had previously sexually abused three BISD students; (2) BISD's Board of Trustees considered the allegations serious enough to justify suspending Parker without pay for a lengthy period of time; (3) BISD was under no obligation to rehire Parker after he was acquitted of these 2001 Allegations; and (4) still, BISD's Board of Trustees formally voted to reinstate Parker as band director less than a month after his acquittal.

c) <u>District Liability: Conclusion</u>

The Court finds that this evidence, if believed by a jury, is legally sufficient to support a finding that BISD's Board of Trustees acted with deliberate indifference to the constitutional rights of Guillory and other Ozen students.

Further, the Court finds that fact questions exist regarding whether adequate consideration of Parker's background would have lead a reasonably policymaker to conclude that

the plainly obvious consequence of the decision to reinstate him would be the violation of a student's right to be free from sexual harassment and assault.

Accordingly, BISD's motion for summary judgment on Guillory's Section 1983 claim must be denied.

B.  Title IX

The Court now turns its attention to the claim brought by Guillory against BISD under Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681-1688.

a)  Title IX:  Legal Standard

Title IX prohibits sex discrimination in educational programs supported by federal funding.  *Delgado v. Stegall,* 367 F.3d 668, 671 (7th Cir. 2004) (citing 20 U.S.C. § 1681(a) ("no person in the United States shall, on the basis of sex…be subjected to discrimination under any education program or activity receiving Federal financial assistance").  The United States Supreme Court has established that Title IX is enforceable through an implied private right of action for damages.  *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 383 (5th Cir. 2000) (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677 (1979); *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60 (1992)).  And, sexual harassment of a student by a teacher constitutes actionable discrimination under Title IX.  *Id.* (citing *Franklin*, 503 U.S. at 75).

In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), the Supreme Court set forth the standard by which a school district may be held liable under Title IX for a teacher's sexual abuse of a student.  *Id.* at 280.  *Gebser* rejected the use of vicarious liability and constructive notice principles in Title IX cases.  *Hansen v. Bd. of Trustees of Hamilton Se. Sch.*

*Corp.,* 551 F.3d 599, 605 (7th Cir. 2008).  Rather, as the Supreme Court explained in *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999), *Gebser* held that a school district can be liable under Title IX "by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge."  *Id.* at 642-43; *Hansen*, 551 F.3d at 605. *Gebser* established that in order to recover damages from a school district for teacher-student sexual harassment, a plaintiff must show that (1) a school district employee with authority to address the discrimination (2) had actual knowledge of the discrimination, and (3) responded with deliberate indifference.  *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (citing *Gebser*, 524 U.S. at 290).

     b)  <u>Title IX:  Analysis</u>

Here, it is undisputed that Thomas, as BISD Superintendent, had the requisite authority to address Parker's abuse of Guillory.  And, the Court already determined that there is a genuine issue of material fact as to whether Thomas acted with deliberate indifference.   Therefore, the Court's consideration of Guillory's Title IX claim is limited to the issue of actual knowledge.

"Whether an official had actual notice is a question of fact."  *Doe v. Dallas*, 220 F.3d at 384 (citing *Farmer*, 511 U.S. at 842).

Defendants argue that in order to prevail on her Title IX claim, Guillory must show that Thomas actually knew that Parker was sexually abusing *a particular student* (Guillory).  But, this argument demands more particular knowledge than Title IX case law requires.  In *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648 (5th Cir. 1997), the Fifth Circuit recognized that a Title IX plaintiff could prevail "by establishing that the school district failed to act even though it

knew that [a teacher] posed a substantial risk *of harassing students in general*." *Id.* at 659. (emphasis added).

While *Rosa H.* preceded *Gebser* and *Davis*, there is nothing in those opinions suggesting that the Supreme Court adopted a more specific knowledge requirement that narrowed or overturned the views expressed in *Rosa H*. As the Seventh Circuit recognized in *Delgado v. Stegall*, 367 F.3d 668 (7th Cir. 2004), "in *Davis* the Court required knowledge only of 'acts of sexual harassment' by the teacher…not of previous acts directed against the particular plaintiff." *Id.* at 672 (Posner, J.) (internal citations omitted). And, as a Southern District of Texas court acknowledged in *Alegria v. State of Tex.*, 2007 U.S. Dist. LEXIS 81744, 2007 WL 3256586 (S.D. Tex. Nov. 2, 2007), *Gebser* "left open the question of whether the federal funding recipient must have had actual knowledge that the plaintiff herself was subjected to sexual harassment, or whether knowledge that other individuals had been subjected to harassment is sufficient to support liability." 2007 U.S. Dist. LEXIS 81744 at *28-29, *aff'd*, 2009 U.S. App. LEXIS 5008, 2009 WL 631609 (5th Cir. Mar. 12, 2009) (citing *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 687 (W.D. Ky 2003)). Still, the majority of courts that have considered the question have concluded that actual knowledge of a particular harasser's conduct in general is sufficient. *See e.g.*, *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (finding that "preexisting knowledge of [the harasser]'s past sexual misconduct" committed against individuals other than the plaintiff "is relevant when determining" whether plaintiff has stated a Title IX claim); *Escue v. N. Okla. College*, 450 F.3d 1146, 1153 (10th Cir. 2006) ("Actual knowledge of discrimination in the recipient's program is sufficient,…harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX."); *Delgado*, 367 F.3d at 672 (stating that Title

IX's actual knowledge requirement could be satisfied if a teacher "had been known to be a serial harasser"); *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1033-34 (D. Nev. 2004) (finding that liability can be based on "actual knowledge of a substantial risk of abuse to students base on prior complaints by other students"); *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d at 688 (finding that "the actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students based on prior complaints by other students"); *J.K. v. Ariz. Bd. of Regents*, 2008 U.S. Dist. LEXIS 83855, at *46-47, 2008 WL 4446712 (D. Ariz. Sept. 29, 2008) (finding that "the proper inquiry under Title IX is whether [school's] response to [teacher's] alleged sexual harassment in general, i.e., to other students as well as J.K., was 'clearly unreasonable' in light of known circumstances"); *N.B. v. San Antonio Indep. Sch. Dist.*, 2007 U.S. Dist. LEXIS 87234, at *9, 2007 WL 4205726 (W.D. Tex. Nov. 27, 2007) (finding that "known allegations [by individuals other than plaintiff]…create a fact issue as to whether the school district knew there was a substantial risk that [teacher] would engage in sexual abuse of students"); *Michelle M. v. Dunsmuir Joints Union Sch. Dist.*, 2006 U.S. Dist. LEXIS 77328, 2006 WL 2927485, at *6 (E.D. Cal. Oct. 12, 2006). Likewise, this Court agrees that actual knowledge of a substantial risk of abuse to students, based on prior complaints by students other than the plaintiff, is sufficient to support liability under Title IX.

In this case, it is undisputed that there were three student complaints against Parker in his first two years as a BISD employee. And, it is settled that Thomas knew of these complaints as early as October 2001. As the Court has discussed, viewing the facts in the light most favorable to Guillory, Parker's background indicated a substantial risk of abuse to students. As such, the Court finds that Thomas had actual knowledge of a substantial risk that Parker would abuse

BISD students based on the prior complaints against him. Accordingly, Thomas's knowledge is sufficient to support liability under Title IX.

### c) Title IX: Conclusion

In conclusion, the Court finds Guillory has produced evidence showing that (1) Thomas had authority to address Parker's discrimination of Guillory, (2) Thomas had actual knowledge of the discrimination, and (3) Thomas responded with deliberate indifference. Further, genuine questions of material fact exist with respect to these issues. Therefore, Defendants' motion for summary judgment on Guillory's Title IX claim must be denied.

## C. Assault & Battery under Texas Law

Finally, Defendants challenge Guillory's claim that Thomas is liable for assault and battery under Texas common law. Guillory does not allege that Thomas personally carried out an assault or battery against her—nor that he ever touched her. Instead, Guillory's claim is premised on the notion that Thomas assisted Parker in committing these torts—and is liable for aiding and abetting Parker. In support of this theory, Guillory cites *Stein v. Meachum*, 748 S.W.2d 516 (Tex. App.—Dallas 1988, no writ) for the proposition that "[w]here one person assists another in making an assault, both are principals and liable in damages for any injury inflicted." *Id.* at 518-19. Relying on *Francis v. Kane*, 246 S.W.2d 279, 281 (Tex. Civ. App.—Amarillo 1951, no writ), the Stein Court also stated that "[a]nyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another, is just as responsible for the wrongful act as the one who actually committed it." *Id.* at 518-19. However, Guillory's argument ignores that these principles are qualified by the rule that "overt participation or some form of encouragement in the commission of the assault" is nevertheless

required to impose liability. *Francis v. Kane*, 246 S.W.2d at 281 (citing *Walker v. Kellar*, 226 S.W. 796, 800 (Tex. Civ. App.—San Antonio 1920, writ ref'd)). It is apparent that Thomas neither encouraged nor overtly participated in Parker's assault of Guillory. *See Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 695-96 (S.D. Tex. 1999).

Regardless, assuming *arguendo* that Thomas could be liable for aiding and abetting Parker, Guillory's tort claim is still barred by the professional immunity provided to Thomas by Section 22.0511 of the Texas Education Code.

Under Section 22.0511, "a professional school employee is not personally liable for acts done within the scope of employment and which involve the exercise of judgment or discretion." *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 618 (Tex. 1987) (citing *Barr v. Bernhard*, 562 S.W.2d 844, 848 (Tex. 1978) (interpreting Section 21.912, the identical predecessor to Section 22.0511). An exception to this immunity arises if and only if "when disciplining a student the employee uses excessive force or negligence with results in bodily injury to the student." *Id.* Based on the Texas Supreme Court's interpretation of Section 22.0511, there are four elements that a defendant must establish to claim immunity as a school employee:

(1) The defendant was a professional employee of a school district;
(2) The defendant's challenged conduct was within or incident to the scope of his duties;
(3) The defendant's duties involved the exercise of discretion or judgment; and
(4) The defendant's acts did not cause the plaintiff injury as a result of the use of excessive force in disciplining the plaintiff or negligence in disciplining the plaintiff.

*Doe v. S&S Consol. I.S.D.*, 149 F. Supp. 2d 274 (E.D. Tex. 2001), *aff'd*, 309 F.3d 307 (5th Cir. 2002). As discussed below, Thomas has established each of these elements.

Thomas is BISD's superintendent, a position specifically included within the statutory definition of "a professional employee of a school district." Tex. Educ. Code Ann. § 21.051. So, he satisfies the first immunity element.

For the purposes of school employee statutory immunity, "[w]hether one is acting within the scope of his employment depends upon whether the *general act* from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed." *Chesshir v. Sharp*, 19 S.W.3d 502, 504-05 (Tex. App.—Amarillo 2000, no pet.) (emphasis added); *Ross v. Marshall*, 426 F.3d 745, 764 n.81 (5th Cir. 2005). The "general act" refers to the general course of conduct being undertaken at the time the injury occurred. *Chesshir*, 19 S.W.3d at 505. Here, Guillory seeks to hold Thomas liable for his actions (or inaction) in rehiring, training and supervising Parker. Clearly, these are acts within the scope of his employment as BISD superintendent. As such, Thomas has satisfied the second professional immunity element.

As for the third element, a defendant's duties are discretionary if they involve "personal deliberation, decision and judgment." *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)); *Enriquez v. Khouri*, 13 S.W.3d 458, 462 (Tex. App.—2000 El Paso, no pet.). Certainly, Thomas's actions with respect to hiring, training and supervising Parker involved personal deliberation, decision and judgment. *See Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641 (S.D. Tex. 1998). Accordingly, the third element is met.

The fourth element, as stated above, requires the defendant to show that his acts did not cause the plaintiff injury through the use of excessive force or negligence in disciplining the

plaintiff. *Doe v. S&S Consol. I.S.D.*, 149 F. Supp. 2d 274 (E.D. Tex. 2001). Under Texas law, "'[d]iscipline' in the school context ordinarily describes some form of punishment." *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 618 (Tex. 1987); *Spacek v. Charles*, 928 S.W.2d 88, 94 (Tex. App.—14th Dist., Houston 1996). There is no allegation that Guillory was injured as a result of being disciplined by Thomas, Parker or anyone else. Therefore, the fourth and final element of professional immunity exists.

Having satisfied the four requirements of professional immunity under Section 22.0511, Thomas has established his entitlement to such immunity as a matter of law. Accordingly, his motion for summary judgment on Guillory's assault and battery claims against him will be granted.

## V. Conclusion

Based on the foregoing authority and analysis, the Court concludes that Guillory has put forth sufficient evidence to create genuine issues of material fact regarding her Section 1983 claim against Thomas, and her Section 1983 and Title IX claims against BISD. Therefore, summary judgment on those claims will be denied. However, no such genuine issues exist with respect to Guillory's assault and battery claim against Thomas. So, summary judgment on that claim is proper.

**IT IS THEREFORE ORDERED** that the *Defendants Beaumont Independent School District and Dr. Carrol Thomas's Motion for Summary Judgment* [Clerk's Docket No. 33] is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing discussion.

**IT IS FURTHER ORDERED** that Plaintiff Whitney Guillory's assault and battery claim brought under Texas common law against Defendant Carrol Thomas is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the following motions are **DENIED AS MOOT**:

(1) *Defendants' Motion to Stay Proceedings and Request for Expedited Ruling* [Clerk's Docket No. 71];

(2) *Plaintiff's Motion to Strike, and Opposition to, Defendants' Second Supplement to Pending Motion for Summary Judgment* [Clerk's Docket No. 77]; and

(3) *Defendants' Second Motion to Stay Proceedings and Request for Expedited Ruling* [Clerk's Docket No. 103].

**IT IS FURTHER ORDERED** that the *Defendants' Motion to Seal* [Clerk's Docket No. 78] is hereby **GRANTED**. Accordingly, the Court **DIRECTS** the clerk to **REMOVE** *Defendants Beaumont Independent School District and Carrol Thomas' Supplement to Motion for Summary Judgment* [Clerk's Docket No. 74] from the record. The Court further **DIRECTS** the clerk to file under seal all exhibits to the *Defendants' Motion to Seal* [Clerk's Docket No. 78]. All such exhibits [Clerk's Docket Nos. 78-2, 78-3, 78-4, 78-5] are not to be made available to the general public and are hereby **ORDERED** to be **SEALED**.

**SO ORDERED**.

**SIGNED** this the **8** day of **May, 2009.**

Thad Heartfield
United States District Judge