

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| WHITNEY GUILLORY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:07-CV-163-TH |
| | § | JURY |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT, CARROL THOMAS and | § | |
| FERGUSON PARKER, JR., | § | |
| | § | |
| *Defendants.* | § | |

# MEMORANDUM OPINION AND ORDER GRANTING APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT FERGUSON PARKER, JR. IN HIS INDIVIDUAL CAPACITY

Before the Court is *Plaintiff's Application for Default Judgment Pursuant to Rule 55* [Clerk's Docket No. 164]. Having considered the motion, hearing argument thereon, and receiving testimony as to the damages sustained by the plaintiff Whitney Guillory, the Court enters this default judgment against defendant Ferguson Parker, Jr. in his individual capacity.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Whitney Guillory is a former Ozen High School student. In the fall of 2001 she began her freshman year of high school. She was fourteen (14) years old at the time and elected to participate in the school band.

Approximately eighteen (18) months prior to Guillory's enrollment at Ozen, the Beaumont Independent School District (BISD) hired Ferguson Parker, Jr. to work as the band director at Ozen.

Parker was not fully certified to teach. Parker is approximately ten (10) years older than Guillory.

During Guillory's freshman year, Parker was indicted for exposing himself to a 13-year-old middle school student, having sexual intercourse with a 15-year-old middle school student, and having sexual intercourse with a 16-year-old Ozen student. BISD conducted a formal investigation of these allegations. Because of the attention Parker gave Guillory, she was one of the students interviewed in the course of the investigation. She denied having experienced or witnessed any inappropriate conduct involving Parker. As a result of this investigation, the BISD Board of Trustees voted to suspend Parker. Parker was subsequently tried and acquitted on the criminal charges related to these allegations. For reasons not altogether clear, BISD offered to rehire Parker as a "permanent substitute" band director at Ozen High School and reinstated back pay for the period of time he was suspended, under investigation and subject to criminal prosecution. BISD Superintendent Dr. Carrol Thomas himself met with Parker to discuss the conditions of his reinstatement, which included not having students alone in his office, not closing his office door, not touching or hugging students, the addition of a female assistant band director, and periodic observations of Parker by Thomas.

Even prior to being rehired by BISD, Parker began to have sexual relations with Guillory. This relationship continued through her senior year in 2004. On occasion, Parker and Guillory left campus during school hours to have sexual intercourse. In December 2004, Guillory's mother came home unexpectedly during the school day and discovered a partially clothed Parker hiding in Guillory's bedroom closet.

That same day, Guillory and her parents met with Thomas and BISD's attorney Melody Chappell. There is a factual dispute concerning what was said during this meeting. Guillory and her parents recall that Thomas encouraged them to keep the incident confidential out of concern as to how it would be reported in the media. Guillory and her parents all provided declarations stating that when Thomas told Chappell "It's Parker again," Chappell made comments to the effect "I told you so" and

"I knew it would happen again." *See Declaration of Whitney Guillory, Declaration of Tonya Piper and Declaration of Clarence Piper* [Clerk's Docket No. 36-2, 36-1, 36-1]. This exchange made it clear to Guillory and her parents that Chappell had advised Thomas not to rehire Parker despite the acquittal of the 2001 allegations, a sensible recommendation given the circumstances. *Id.* BISD and Thomas deny that these comments were made or that Chappell discouraged the rehiring of Parker.

Criminal charges were brought against Parker as a result of his inappropriate contact with Guillory. He pleaded guilty to sexual assault of a child (Cause No. 95101) and having an improper relationship between an educator and a student (Cause No. 95103), both second degree felonies under Texas law. He served time in state custody and is required to register as a sex offender.

Guillory filed this civil suit against BISD and Thomas and Parker in their individual and official capacities. She brought suit against BISD, Thomas, and Parker for deprivation of her civil rights under 42 U.S.C. § 1983; against BISD under Title IX of 20 U.S.C. §1681; and against Thomas and Parker for supplemental state law claims of assault and battery pursuant to 28 U.S.C. § 1367.

Thomas moved for summary judgment with respect to Guillory's Section 1983 claim on the basis of qualified immunity. This Court held that Thomas was not as a matter of law entitled to qualified immunity. The Fifth Circuit affirmed this Court's holding and remanded the case for trial.

After the case was specially set for trial, Thomas and BISD agreed to settle Guillory's claims for $462,000.00. The claims against these two defendants were then dismissed with prejudice by stipulation. This settlement also resolved the claims alleged against Parker in his official capacity, because claims against him in his official capacity as a representative of the school district are treated as claims against the governmental entity itself. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116 L. Ed.2d 301 (1991).

As such, the only claims remaining are the Section 1983 civil rights claim and the supplemental state law claims for assault and battery alleged against Parker in his individual capacity.

Parker is before this Court *pro se*. The Court notes that Parker is well within his rights to appear before this Court as a *pro se* defendant, unrepresented by counsel. Our procedural rules provide that "parties may plead and conduct their own cases personally." *See* 28 U.S.C. § 1654. However, Parker's *pro se* status does not entitle him to more lenient scrutiny before this Court. "[T]he right to self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *See Dersh v. Dozier*, 851 F.2d 1509, 1512 (5th Cir. 1988). The Fifth Circuit has observed that even a non-lawyer should realize the peril in ignoring court notices, failing to attend court-ordered hearings, and refusing to accept communications from the court and opposing counsel. *Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1169 (5th Cir. 1980).

Guillory filed this application for default on the grounds that Parker's involvement in the case has been limited to filing an answer to the original complaint and participating in a court-ordered deposition while he was incarcerated. In violation of various court orders and federal and local rules, Parker did not file an answer to Guillory's amended complaint; participate in the Rule 26(f) conference; attend the Rule 16 conference; make any disclosures; respond to any motions (including the application for default); participate in the preparation of the proposed joint final pre-trial order; or appear at a single case setting. Based on the foregoing, Guillory seeks entry of default judgment against Parker.

On October 29, 2010, this Court set a hearing on Guillory's motion for default judgment for Wednesday, November 10, 2010 at 10:30 a.m. in Lufkin, Texas. *See Clerk's Docket No. 171*. This order was sent by certified mail (Label No. 7003 1680 0002 5173 0032) to Ferguson Parker, Jr. at 5750 Sunbird Lane in Beaumont, Texas, 77708. According to postal records, the notice was left at his residence on November 2, 2010 at 1:22 p.m.

The Court has confirmed through the on-line sex offender registry maintained by the Texas Department of Public Safety that 5750 Sunbird Lane is in fact Parker's correct address. Convicted sex offenders are required to register with local law enforcement in the jurisdiction where they reside, and this information is maintained by the DPS. According to DPS records, Ferguson Parker, Jr.—an African American male born May 17, 1977—does in fact reside at 5750 Sunbird Lane, where the notice was left.

On November 10, 2010, the case was called for hearing. Parker neither attended the hearing nor sent counsel on his behalf. The Court confirmed that he did not contact opposing counsel, the clerk's office, or chambers directly with a request for a continuance or to explain his absence. After hearing argument from Guillory's counsel regarding the propriety of entry of default, the Court orally entered default on the record.

The Court then convened a hearing pursuant to Federal Rule of Civil Procedure 55(b)(2)(B) to determine the amount of damages to which the plaintiff is entitled from Parker. The Court received testimony from Guillory and Michael E. Walker, a clinical psychologist who evaluated plaintiff.

## II. LEGAL BACKGROUND

Federal Rule 55(a) provides that entry of default is appropriate where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." In the order setting the case for hearing, the Court gave Parker notice that it was considering entry of default judgment in favor of Guillory as a result of Parker's failure to defend.

Entry of default judgment is also an available sanction under Federal Rule of Civil Procedure 37(b) and (c) for Parker's failure to comply with this Court's discovery orders and for his failure to make mandatory disclosures. Although judgment by default is considered an extreme sanction, it is within the remedies available when a litigant fails to comply with court orders and the applicable rules of procedure. *See United States v. Dajj Ranch*, 988 F.2d 1211 (5th Cir. 1993); *see also McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000 (5th Cir. 1970); *see also McLeod, Alexander, Power & Apffel v. Quarles,* 842 F.2d 1482, 1485 (5th Cir. 1990). The Court directed the parties to consider the five-part framework embraced by the Ninth Circuit in *Connecticut Gen. Life Ins. Co. v. New Images*, 482 F.3d 1091, 1096 (9th Cir. 2007) when considering the propriety of terminating sanctions:

- the public's interest in expeditious resolution of litigation;

- the court's need to manage its dockets;

- the risk of prejudice to the party seeking sanctions;

- the public policy favoring disposition of cases on their merits; and

- the availability of less drastic sanctions.

Entry of default precludes a trial on the merits. *Olcott v. Delaware Flood Co.*, 327 F.3d 115, 119 n.3 (10th Cir. 2003). Where, as here, the plaintiff's claim is not for a sum certain, the district court is authorized to conduct an evidentiary hearing to determine the amount of damages. *Id.*

### III. FINDINGS

1. The Court **FINDS** that Ferguson Parker, Jr. was served with notice of the application for default judgment at least seven (7) days prior to the hearing in accordance with Federal Rule 55(b)(2).

2.	The Court **FURTHER FINDS** that plaintiff Whitney Guillory has made the showing required by Federal Rule 55(a).

3.	The Court **FURTHER FINDS** that Ferguson Parker, Jr. has failed to defend against the claims for affirmative relief alleged by plaintiff Whitney Guillory herein.

4.	The Court **FURTHER FINDS** that entry of default judgment against Ferguson Parker, Jr. under Federal Rule 55(a) is appropriate.

5.	The Court **FURTHER AND ALTERNATIVELY FINDS** that entry of default judgment is an appropriate sanction under Federal Rule 37(b) and (c) for Ferguson Parker, Jr.'s failure to comply with this Court's discovery orders and for his failure to make mandatory disclosures, after considering the following factors: the public's interest in the expeditious resolution of litigation; the court's need to manage its dockets; the risk of prejudice to the party seeking sanctions; the public policy favoring disposition of cases on their merits; and the availability of less drastic sanctions.

6.	The Court **FURTHER FINDS** that plaintiff Whitney Guillory sustained compensatory damages for the violation of her civil rights by Ferguson Parker, Jr. under 42 U.S.C. § 1983.

7.	The Court **FURTHER FINDS** that plaintiff Whitney Guillory sustained compensatory damages for the violation of her state law rights to be free from assault and battery by Ferguson Parker, Jr.

## IV. CONCLUSION

The Court is compelled to make several comments in closing. There are so many aspects of this case that the Court finds deeply troubling that should not go unmentioned.

The Court begins with the victim, Whitney Guillory. She was a model student. Throughout this litigation she has been described as an exceptional student, a gifted athlete, a leader among her peers, a beauty, an individual who showed great promise and potential. By all accounts she was a dynamic, motivated, and goal-oriented young woman. Thomas himself gave deposition testimony that he was a "basket case" when the Ozen principal advised him that Guillory was Parker's victim. He explained that in a school district with a student population in excess of 20,000, the superintendent tends to only personally know the students on the extremes—the problem students and the success stories. According to Thomas, Guillory fell into the latter category. In fact, he described her as one of the most outstanding students to *ever* attend school in the district and specifically referenced an impressive speech she delivered to the student body. He expected that Guillory would be highly successful in college and in whatever she chose to undertake in the future.

Enter Ferguson Parker, Jr., an uncertified teacher with a history of inappropriate conduct toward young female students. He was a teacher, the quintessential authority figure in the lives of school children, a person to be trusted and obeyed. His early interactions toward Guillory are consistent with the grooming patterns of a sexual predator: he showed favoritism toward her, afforded her special privileges, and bestowed an inordinate amount of attention on her, so much so that it came to the school district's attention even before the sexual assault occurred. He gave her access to his office, kept food for her there, and gave her passes to excuse class absences and tardiness. This insidious, graduated contact in isolated areas eventually turned physical, and according to the laws of the State of Texas, criminal. She was exploited for Parker's sexual gratification, with complete disregard for the physical, emotional, and cognitive damage he was causing. She was victimized for years at the hands of someone

who was supposed to protect and guide her through the challenging adolescent years. Instead, he limited her exposure to normal developmental experiences. He distorted her sense of identity. He robbed her of her innocence. There can be no doubt that the actions of this sick and selfish man detrimentally impacted her developmental trajectory.

After years of private victimization by Parker, Whitney Guillory was then senselessly humiliated by her peers. Once the assault became public in December 2004, she was subjected to ridicule, harassment, and even vandalism of her home and vehicle by those loyal to Parker. The evidence makes clear that the public disclosure of what occurred was particularly traumatic for her. Her grades dropped, she withdrew from extra-curricular activities, she began to suffer sleep disturbances, changes in appetite, and unintended weight loss. Even years later she continues to battle depression, anxiety, disassociative behaviors, poor self esteem, feelings of shame, and diminished enjoyment of life. She has struggled with efforts to attend college and continues to have difficulty sustaining employment.

This never would have happened had the school district and the superintendent made wiser decisions, choices guided by the best interests of the students. At the very least, we expect the school district and superintendent to make decisions that do no harm to the children entrusted to them. That was not the case here. Decisions made at the highest level of the BISD administration did an extraordinarily great deal of harm to Whitney Guillory, and in all likelihood, other young women who were victimized by Ferguson Parker, Jr. while he was on the public payroll. No student should ever suffer at the hands of an educator, but that the school administration would knowingly reinstate a sexual perpetrator whose dangerous proclivities were known is beyond all comprehension.

This district and the individuals involved failed Whitney Guillory. No amount of money will make her whole or give back to her what has been taken. The facts before the Court reflect a daisy chain of bad decisions that resulted in untold harm to a gifted young woman. This Court would hope

that lessons have been learned from these reprehensible events, events that undermine the most fundamental purposes of public education. The superintendent, school district, and advisers thereto have an obligation to the students, the public, and a brave young woman named Whitney Guillory to turn this into a teachable moment and to ensure that a situation such as this never again happens on their watch.

## V.  ORDER

**IT IS THEREFORE ORDERED** that the *Plaintiff's Application for Default Judgment Pursuant to Rule 55* [Clerk's Docket No. 164] against Ferguson Parker, Jr. in his individual capacity is in all things **GRANTED**.

**IT IS FURTHER ORDERED** that the Court renders judgment as follows:

1. Judgment in favor of plaintiff Whitney Guillory and against Ferguson Parker, Jr. on all issues of liability with respect to the claims brought against him in his individual capacity pursuant to 42 U.S.C. § 1983;

2. Judgment in favor of plaintiff Whitney Guillory and against Ferguson Parker, Jr. on all issues of liability with respect to the claims brought against him for violation of state law;

3. Compensatory damages in the amount of $500,000.00 for the violation of Whitney Guillory's rights under 42 U.S.C. § 1983;

4. Compensatory damages in the amount of $500,000.00 for the violation of Whitney Guillory's state law rights to be free from assault and battery;

5. Attorney's fees as provided by 42 U.S.C. § 1988(b);

7. Costs of court; and

8. Pre-judgment and post-judgment interest as provided by law.

   **SO ORDERED**.

   **SIGNED** this the **12** day of **May, 2011.**

   _____
   Thad Heartfield
   United States District Judge